IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br>vs.<br>JAMES ALAN SIEVERS,<br>    Defendant. | NO. CR20-4001-LTS<br><br>**SENTENCING MEMORANDUM** |

**POTENTIAL WITNESS(ES)**

1. None anticipated

**EXHIBITS**

A. Possible Support Letters

**CONTESTED SENTENCING ISSUES**

1. Defendant's Motion for Downward Variance

2. Guideline objections:

    a. Paragraphs 8 and 13 objections are <u>withdrawn.</u> Following further review of additional discovery, the offense conduct in paragraphs 4-15 included June 5, 2019 or after. As the date range of the offense conduct started on or about June 5, 2019 this withdraw of objection results in the criminal conviction in Paragraph 35 being scored.

        i. The withdraw of paragraph 8, 13, and 35 is recast as part of Defendant's departure and variance arguments for over-representativeness of criminal history, including the date of the paragraph 35 conviction and the additional

1

        2 points for the criminal justice sentence from paragraphs 41 and 43.

    ii. Said dates of the offense conduct in relationship to the dates of the prior conviction in paragraphs 35, over-represents Defendant's final Criminal History Category in paragraph 44.

b. Paragraph 23 and 35 must still be resolved if the agreed-to (not objected to) facts of conviction from Paragraph 35 legally qualify as a pattern of activity under §2G2.2(b)(5)

c. Paragraph 24 must be resolved as it relates to §2G2.2(b)(6) being over-representative of the offense conduct and/or as a variance.

d. Paragraph 41/43/44 objections <u>withdrawn</u> considering the withdraw of objection to paragraph 8/13.

    i. As stated above, the withdraw is recast as an argument for departure and variance of over-representativeness of criminal history.

## FACTS AND PROCEDURAL HISTORY

Defendant, James Alan Sievers (hereafter, "James"), entered a plea of guilty to Receipt of Child Pornography (Count 1) and Possession of Child Pornography (Count 2) before Honorable Magistrate Judge Mahoney and is now pending sentencing before your Honor.

James's Presentence Investigation Report ("PSIR") establishes an advisory guideline range of 235-293 months. (¶89). James has an applicable mandatory minimum sentence of 15 years (180 Months). (¶88). James submits this memorandum in support of an initial low-end guideline sentence and for a downward variance to the mandatory minimum.

2

# BRIEF IN SUPPORT OF A DOWNWARD VARIANCE

a. **The use of a computer enhancement under §2G2.2(b)(6), as well as the cumulative nature of other enhancements, creates a disproportionately high guideline and unduly harsh guideline sentence.**

James's objection to ¶24 of the PSIR does not challenge that his conduct did involve the use of a computer, but notes that it is nearly impossible to commit this offense without a computer and it is unlikely that any modern child pornography sentencing does not involve a computer or other interactive computer service. This additional two-level upward adjustment, along with the cumulative other adjustments creates a disproportionate impact on the other §3553(a) factors and disproportionately accounts for the offense conduct.

Many District Courts have categorically (by general rejection or by policy disagreement) rejected §2G2.2, which contains nearly all the guideline application for child pornography sentencing. These Courts have found the child pornography guidelines illogical, overtly harsh and/or not based on any empirical data. See generally, *United States v. Beiermann*, 599 F. Supp. 2d 1087, 1106 (N.D. Iowa 2009); *United States v. Diaz*, 720 F. Supp. 2d 1039, 1041 (E.D. Wis. 2010); *United States v. Riley*, 655 F. Supp. 2d 1298, 1304-05 (S.D. Fla. 2009); *United States v.McElheney*, 630 F. Supp. 2d 886, 901-02 (E.D. Tenn. 2009); *United States v. Grober*, 595 F. Supp. 2d 382, 412 (D.N.J. 2008).

The cumulative impact of the §2G2.2 guidelines on James show the disproportionate or stacking of enhancements that create an illogical, harsh, and indistinguishable guideline from the specific offense conduct in this case. This is in addition to the over-representativeness of his criminal history. James's offense conduct (excluding the objected to 5-levels for pattern of activity) accounts for 13 levels of enhancements for the general offense conduct of possessing

3

images of prepubescent minors. These enhancements are accumulated for the same general conduct; 2-levels for prepubescent minors (¶20), 4-levels of sadistic or masochistic conduct (¶22), 2-levels for use of a computer (¶24), and 5-levels for more than 600 images (¶25).

As this Court certainly has heard before, the nature of the above enhancements nearly always applies to child pornography cases. This case is no different. In prior U.S. sentencing commission studies, it was found that the prepubescent enhancement applied 96 percent of the time, that the enhancements for the number of images applied 96 percent of the time, and the enhancement for sadistic and masochistic conduct applied 75 percent of the time. [1] These prior commission findings also noted that "sentencing enhancements that originally were intended to provide additional proportional punishment for aggravating conduct now routinely apply to the vast majority of offenders." Report at p. 316.

The common sense conclusion from the nature of the original drafting of §2G2.2 and the current standard case (as this one is), is that the use of computers and internet produce the access to the imagery, which creates the large amount of enhancements (including the number of images, prepubescent minors, and sadistic and masochistic conduct). Without the aid of the internet and computers, it is presumed a defendant would need to seek out from multiple sources the volume of these types of images, whereas now the internet provides the stream of access. At a minimum, the 2-level use of a computer should be varied down two levels as someone not using the computer is likely more culpable than the common offender who does use it. This is in

---

[1] https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Full_Report_to_Congress.pdf

4

addition to the other duplicative enhances, but the computer enhancement is clearly the most egregious in creating sentencing disparity and over-representativeness of culpability.

b. **James's Criminal History is over-representative of his culpability and creates a disproportionate sentence considering the remaining §3553 factors**.

As cited in the opening, James has withdrawn the objections to the offense conduct dates as the offense conduct does accurately account for the date range of the offense conduct in the indictment. Noting this, though, the offense conduct occurring in the summer of 2019 creates an over-representativeness of his criminal history. As shown in the original objections and in the Probation Officer responses, the offense of conviction in paragraph 35 would drop off from scoring on August 11, 2019, as the 15-year look back date was August 12, 2004. (cmt. 1, §4A1.1(a). The offense conduct range as noted in the original indictment, and as pled to, included June 5, 2019. As such, the approximate 60-day window before August 11, 2019 created the timeframe for the ¶35 offense to be scored. (Notably, this 3-point convict and one category criminal history increase also accounts for a 5-level upward offense adjustment).

This is in addition to the offense of conviction in ¶¶41/43 causing additional over-representation. As noted above, James has withdrawn his objection to ¶41 and ¶43 because even crediting back proper good time for discharge from his criminal justice sentence would have ended the criminal justice sentence July 16, 2019. (See US Probation response to objection). Because this recalculation of good time would still fall within the offense conduct timeframe, the Objection was withdrawn. But this short window of time results in two additional criminal history points. This is noted because this approximate 60-day window has effectively scored 5 criminal history points. James is not challenging the scoring that he has 9 criminal history points

5

and is a Category 5, but the nature and timing of this scoring over-represents his history and as such viewing his history as a Category 4 more appropriately accounts for his criminal history.

   c. **James's personal characteristics, including his difficult upbringing, past trauma, mental health, mitigate in favor of a downward variance to the mandatory minimum**

A full review of James's PSIR contains several mitigating factors. While aggravating factors clearly exist, the mitigating factors exceed the aggravating factors. Also, the aggravating factors have been fully accounted for in the advisory range (especially noting the multiple and cumulative upward adjustments). As shown throughout the PSIR and as argued during sentencing, James had less than an idyllic childhood. Mitigating factors include; he had no relationship with his father (¶49), was sexually abused and victimized by his mother (¶76), suffered significant abuse and victimization by a step-father (¶51), was removed from his home by the Department of Human Services (¶¶51-55), was in and out of several State placements as a youth, has a long history of significant mental health issues (¶¶62-77), and has not shown the mental or social aptitude to adjust to independent living (¶80, mental health section).

Candidly, James has had opportunities for supervision and treatment (¶41, ¶76), which have not availed well to his adjustment from his clearly deep mental health issues and past victimization. It is notable that while James has struggled with supervision and treatment, the majority of that was through residential treatment facilities rather than incarceration. (James did have one successful term of supervision (¶38)). James will be receiving a significant sentence in this case, at least 180 months. A sentence to such a long term will provide structure and institutional treatment that community-based treatment was less effective at. James's offense conduct is not mitigating, nor is his past failure to be supervised in two cases. While James has been incarcerated before, it has been for intermittent amounts of time through short incarceration

and community-based supervision (¶35, ¶41). This sentence will be far more significant. A sentence of 180 would be sufficient and not greater than necessary to account for offense conduct and his personal characteristics.

d. **The Court should not impose the 5-level enhancement against James based on a pattern of activity. But, if the Court does, the nature of the pattern of activity should be varied down due to it being over 15 years old and the circumstances of it occurring while James was a juvenile.**

First, James is not challenging or objecting to the facts of the conviction in ¶35 as alleged to create the 5-level adjustment in ¶23. James argues the conduct in that conviction are a singular act of sexual abuse. James agrees that in order to qualify as a "pattern of activity" for §2G2.2(b)(5), the "pattern of activity" is where there are "two or more separate instances of sexual abuse or sexual exploitation of a minor by the defendant, whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same minor; (C) resulted in a conviction for such conduct." It is the Government's burden to prove the specific offense characteristics apply. See, *United States v. Smith*, 656 F.3d 821, 825 (8th Cir. 2011).

The PSIR identifies the conviction in ¶35 as the conduct forming the basis for the pattern of activity enhancement. Again, James does not object to the conduct described in ¶35. James objects to the application of §2G2.2(b)(5) as the conduct between K.C. and James occurred as a continuous act of sexual abuse between two minors. The conviction was for a singular count of sexual abuse while occurring on multiple dates, was a continual act of conduct, rather than distinct and separate acts.

James alternatively argues that because the nature and circumstances of the conviction and conduct in ¶35 was between juveniles and the conviction occurred when James was a juvenile it would merit some variance from the full 5-point enhancement. Furthermore, the conduct

occurred over 18 years ago, with a conviction occurring over 17 years ago. This is not an enhancement of a recent pattern of activity, rather conduct of a juvenile. James does not argue against the gravity of the conviction nor the offense conduct for that conviction, but that age of the conviction and the disproportionate impact it has on his offense conduct score and criminal history score bears some mitigation and variance.

## **CONCLUSION**

For all of the reasons stated above and in consultation with 18 U.S.C. §3553(a), the Court should vary downward to the greatest extent possible.

By ___*/s/ Jared R. Weber*___
Jared R. Weber
209 First Street NE
PO Box 412
Orange City, IA 51041
(712) 737-3887
(712) 737-3886-fax
jared@weberlawiowa.com
ATTORNEY FOR DEFENDANT

Original Filed
Copy to: AUSA Steenholdt

| The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings on 12/1/20 |
|---|
| By: ☐ U.S. Mail ☐ FAX |
| ☐ Hand Delivered ☐ EDMS |
| X ECF/Pacer ☐ Other: Email |
| Signature  /s/ Jared R Weber_____ |